D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AVAIL HOLDING LLC,

               Plaintiff,                        **MEMORANDUM & ORDER**

     -against-                                 15-CV-7068 (NGG) (LB)

FRANCES RAMOS, COMMISSIONER OF
SOCIAL SERVICES OF THE CITY OF NEW
YORK SOCIAL SERVICES DISTRICT,
CREDIT ACCEPTANCE CORPORATION,
NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD, NEW YORK CITY
TRANSIT ADJUDICATION BUREAU, and
JOHN DOE "1" through "12",

               Defendants.
------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Avail Holding, LLC brings this residential mortgage foreclosure action against Defendant Frances Ramos ("Ramos" or "Defendant"), seeking to foreclose on a mortgage held by Ramos encumbering the property located at 101-22 132nd Street, South Richmond Hill, New York 11419 (the "Subject Property"). (See Compl. (Dkt. 1).) The Complaint also names the following additional defendants, alleging that they "have or may claim to have some interest in" the Subject Property: Commissioner of Social Services of the City of New York Social Services District; Credit Acceptance Corporation; New York City Environmental Control Board; New York City Transit Adjudication Bureau; and John Doe "1" through "12." (Id. ¶¶ 2-9.)

      Before the court is Ramos's Motion to Dismiss the Complaint on abstention grounds pursuant to Federal Rule of Civil Procedure 12(b) (the "Motion"). (See Not. of Mot. to Dismiss (Dkt. 18).) For the following reasons, Defendant's Motion is DENIED.

1

I. BACKGROUND

　　A. The Instant Action

Except where otherwise indicated, the following facts are drawn from the Complaint and are presumed to be true for the purpose of this Memorandum and Order. Ramos resides in and owns the Subject Property. (Compl. ¶ 3; Aff. of Frances Ramos in Support of Mot. to Dismiss ("Ramos Aff.") (Dkt. 18-2) ¶ 2.) On June 15, 2007, Ramos executed a promissory note (the "Note") to First Franklin Financial Corp. ("First Franklin"), whereby First Franklin loaned her $392,800. (Compl. ¶ 12.) The Note was secured by a mortgage (the "Mortgage") on the Subject Property, which Ramos executed, acknowledged, and delivered to Mortgage Electronic Registration Systems, Inc., as nominee for First Franklin. (Id. ¶ 13.) The Note and Mortgage were reassigned several times before being assigned to Plaintiff on November 6, 2015. (Id. ¶ 19.) Beginning in August 2010, Ramos stopped making the required monthly payments and thereby defaulted on the Mortgage. (Id. ¶ 21.) Default continues to date and, as of the filing of the Complaint, Ramos owes approximately $548,653.76. (Id. ¶¶ 22, 26.)

On December 11, 2015, Plaintiff commenced this foreclosure action pursuant to New York Real Property Actions and Proceedings Law ("RPAPL") §§ 1301 et seq. (Id. ¶ 1.) According to Ramos, this is the third foreclosure action that Plaintiff and its predecessors-in-interest have commenced against her, with the first two actions being dismissed "because the plaintiff in each failed to comply with New York foreclosure law's predicate notice requirements." (Ramos Aff. ¶ 7.)

2

Ramos has moved to dismiss the Complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and the abstention doctrine.[1] (Not. of Mot. to Dismiss at 2.) She argues that the court should abstain from adjudicating this action "in order to effectuate New York's comprehensive regulatory scheme and consumer protections governing residential foreclosure actions, which address a foreclosure crisis of compelling interest to the State of New York." (See Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Br.") (Dkt. 18-3) at 1.) Plaintiff opposes Defendant's Motion, arguing that the abstention doctrine is inapplicable to this case because (i) "New York state laws governing prosecution of a residential foreclosure action are clear, unambiguous and not subject to any significant differing interpretations of local policy"; and (ii) there is no administrative agency charged with adjudicating foreclosures in New York. (See Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") (Dkt. 18-7) at 2, 10-11.)

### B. New York State's Residential Mortgage Foreclosure Process[2]

In response to the mortgage foreclosure crisis, New York enacted the Foreclosure Prevention and Responsible Lending Act ("FPRLA"), which provides a series of legal protections and foreclosure prevention opportunities to homeowners at risk of losing their homes. See 2008 N.Y. Sess. Law Ch. 472 (S. 8143-A). (See also Def.'s Br. at 6.) Pursuant to protections enacted by the FPRLA, for example, a lender, an assignee or a mortgage loan servicers is required to send borrowers a notice of default at least 90 days before commencing a legal action against the borrower (see N.Y. Real Prop. Acts. § 1304) and must file certain

---

[1] Defendant's Motion should be treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules ("Rule 12(b)(1)"). See City of N.Y. v. Milhelm Attea & Bros., 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008) (holding that a motion to dismiss based on the abstention doctrine is considered as a motion made pursuant to Rule 12(b)(1)).

[2] In adjudicating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), courts may consider matters outside the pleadings. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc., 862 F. Supp. 2d 170, 181 n.11 (E.D.N.Y. 2012).

information about the loan and the borrower with New York's Superintendent of Financial Services before initiating the lawsuit (see id. § 1306). In addition, in any foreclosure action involving an owner-occupied home, the parties must participate in a mandatory court-supervised settlement conference. (See N.Y. C.P.L.R. 3408.) At the settlement conference, parties are required to "negotiate in good faith to reach a mutually agreeable resolution, including but not limited to a loan modification, short sale, deed in lieu of foreclosure, or any other loss mitigation, if possible."[3] (Id.) The Uniform Rules for New York State Trial Courts provide that motions are "held in abeyance" while these settlement conferences are held. (See N.Y. Comp. Codes R. & Regs. tit. 22, § 202.12-a(c)(7).)

In Queens County, New York, where the property at issue in this foreclosure matter is located, the New York Supreme Court created a specialized Residential Foreclosure Part to conduct the mandatory settlement conferences pursuant to Rule 3408 of the New York Civil Practice Law and Rules ("CPLR 3408").[4] (See Decl. of Christopher Newton (Newton Decl.) (Dkt. 18-1) ¶ 14.) The Residential Foreclosure Part is staffed by a judge and court referees who serve as mediators in the settlement conferences. (See also id. ¶ 16.)

---

[3] Other laws and regulations affording protection to homeowners in New York include: (i) Rule 3012(b) of the New York Civil Practice Law and Rules, which requires plaintiffs' attorneys to file a certificate of merit with the summons and complaint in foreclosure actions on home loans, in which the attorney must certify that "there is a reasonable basis for the commencement of such action and that the plaintiff is currently the creditor entitled to enforce rights under such documents"; and (ii) Part 419.11 of the New York State Department of Financial Services Business Conduct Rules, 3 N.Y.C.R.R. 419.11, which mandates, inter alia, that loan servicers "shall make reasonable and good faith efforts . . . to engage in appropriate loss mitigation options, including loan modifications, to avoid foreclosure."

[4] See Residential Foreclosure Part, https://www.nycourts.gov/courts/11jd/supreme/civilterm/foreclosure.shtml (last visited March 8, 2017).

## II. DISCUSSION

Defendant does not dispute that the court has diversity jurisdiction to adjudicate this action.[5] Instead, Ramos argues that the court should decline to exercise its jurisdiction and should dismiss the case pursuant to the abstention doctrine. (See Def.'s Br. at 4-5.) "As a general rule, federal courts are under a virtually unflagging obligation to exercise the jurisdiction given them." Cannady v. Valentin, 768 F.2d 501, 503 (2d Cir. 1985) (per curiam) (internal citations omitted). Under the abstention doctrine, however, a district court may decline to exercise or postpone the exercise of its jurisdiction in certain "exceptional circumstances." Colo. River Water Conservation Dist. v. Akin, 424 U.S. 800, 813 (1976) (citation omitted).

> Abdication of the obligation to decide cases can be justified under [abstention] doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest. It was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.

Id. at 813-14 (citations and quotation marks omitted); see also Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996); Cty. of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 189 (1959). "Because abstention is the exception, not the rule, a party seeking abstention carries a heavy burden . . . ." State Farm Mut. Auto. Ins. Co. v. Mallela, 175 F. Supp. 2d 401, 410 (E.D.N.Y. 2001) (internal quotation marks and citation omitted); see Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y., 762 F.2d 205, 210 (2d Cir. 1985) (holding that party opposing the exercise of federal jurisdiction has the "burden of persuasion").

---

[5] Plaintiff adequately pleaded in the Complaint that the parties are citizens of different states and the amount in controversy, exclusive of interests and costs, exceeds $75,000. (See Compl. ¶ 10.) See also 28 U.S.C. § 1332(a). The court notes that the inclusion of Doe defendants does not destroy diversity unless it is later found that one or more of the unknown defendants is non-diverse. Merrill Lynch Bus. Fin. Servs. Inc. v. Heritage Packaging Corp., No. 06-CV-3951 (DGT), 2007 WL 2815741, at *3 (E.D.N.Y. Sept. 25, 2007). Accordingly, the court is satisfied that it has subject matter jurisdiction over this case.

Defendant argues that the instant action should be dismissed under the abstention principles outlined in Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25 (1959), and Burford v. Sun Oil Co., 319 U.S. 315 (1943). For the following reasons, the court finds that neither doctrine applies to this case.[6] Accordingly, Defendant's Motion to Dismiss is denied.

A. **Thibodaux** Abstention

Abstention is appropriate where an action "presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." Colo. River, 424 U.S. at 814 (citing Thibodaux, 360 U.S. 25). Defendants refers the court to New York's various regulations and statutes governing the judicial foreclosure process[7] and asserts that the court should abstain from exercising its diversity jurisdiction because "the case law interpreting New York's recently enacted laws and rules is constantly developing . . . and its [courts] have developed expertise adjudicating . . . novel questions of law arising under New York's foreclosure laws." (Def.'s Br. at 4.)

Defendant's primary argument is that abstention is appropriate because "[t]he New York state courts continue to grapple with the parameters of the good faith negotiation standard and the appropriate remedies for failure to negotiate in good faith" with respect to the settlement conferences that are mandated by CPLR 3408.[8] (Id. at 19.) As an initial matter, the parties dispute whether, under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), and Hanna v.

---

[6] The court notes that some cases treat Thibodaux abstention as part of Burford and others construe Thibodaux as a separate doctrine. Because Defendant appears to treat the doctrines as distinct from one another (see generally Def.'s Br.), the court will address each separately while recognizing that they overlap at least to some degree. See Colo. River, 424 U.S. at 815 (describing the holdings in Thibodaux and Burford as distinct but categorizing the cases together as one "category of abstention").

[7] See supra Section I.B.

[8] Ramos also notes that "the legislature and the [Department of Financial Services ("DFS")] continue to amend and refine the relevant laws and regulations [concerning mortgage foreclosure]" (id. at 19-20), but this fact has no bearing on whether this case presents "difficult questions of state law." See Colo. River, 424 U.S. at 814.

Plumer, 380 U.S. 460 (1965), Defendant would even be entitled to a settlement conference pursuant to CPLR 3408 in federal court. (Compare Def.'s Reply Mem. in Supp. of Mot. to Dismiss ("Reply Br.") (Dkt. 18-8) at 3-4, 6 (arguing that CPLR 3408 establishes a "substantive right" to a settlement conference and Federal Rule of Civil Procedure 16 "is not a substitute for the substantive requirements of CPLR 3408") with Pl.'s Opp'n at 8 (asserting that Defendant would not be entitled to a settlement conference pursuant to CPLR 3408 because CPLR 3408 is a "procedural provision, not a substantive one"). The court need not decide this question on Defendant's Motion to Dismiss because Defendant has not demonstrated that CPLR 3408 is difficult to apply, warranting Thibodaux abstention. Put differently, even if Ramos were entitled to a settlement conference pursuant to CPLR 3408 in federal court, which the court is skeptical that she is,[9] Ramos has failed to persuade the court that the law concerning these settlement conferences is particularly challenging to apply.

The decisions cited by Ramos make clear that the standard for determining whether a party has failed to negotiate in good faith is well settled: "To conclude that a party failed to negotiate in good faith pursuant to CPLR 3408(f), a court must determine that 'the totality of the circumstances demonstrates that the party's conduct did not constitute a meaningful effort at reaching a resolution.'" U.S. Bank Nat. Ass'n v. Smith, 999 N.Y.S.2d 468, 470 (N.Y. App. Div. 2014) (internal citation omitted); see also, e.g., LaSalle Bank, N.A. v. Dono, 24 N.Y.S.3d 144, 146 (N.Y. App. Div. 2016). Furthermore, the rule itself clearly delineates the appropriate remedies for a party's failure to negotiate in good faith. See N.Y. C.P.L.R. 3408(j),(k). As such, there is no occasion for the court to abstain on this basis.

---

[9] See, e.g., Gustavia Home, LLC v. Rice, No. 16-CV-2353 (BMC), 2016 WL 6683473, at *5 (E.D.N.Y. Nov. 14, 2016) (holding CPLR 3408 is a "procedural mechanism of state law and therefore is inapplicable in federal court" (citing Kondaur Capital Corp. v. Cajuste, 849 F. Supp. 2d 363, 370-71 (E.D.N.Y. 2012) (same)).

Defendant cites a number of state statutes that arguably would apply in federal court, see, e.g., N.Y. R.P.A.P.L. §§ 1304, 1306, but, similarly, she has not demonstrated that these statutes present "difficult questions of state law."[10] See Colo River, 424 U.S. at 814. To the contrary, the statutory provisions at issue appear to be unambiguous. For example, Sections 1304 and 1306 of the New York Real Property Actions and Proceedings Law consist of straightforward notice and pre-suit filing requirements.

In cases like the one at hand where the state law issues "are not unclear, the federal court should not abstain." Canaday v. Koch, 608 F. Supp. 1460, 1468 (S.D.N.Y. 1985); see Naylor v. Case and McFrath, Inc., 585 F.2d 557, 565 (2d Cir. 1978) ("A plain limit on abstention is the case in which . . . the issue involved is one on which the state law is clear, and the risk of rendering a decision that would be disruptive of the even development of state law can be excluded.")[11] Accordingly, the court finds that abstention under Thibodaux is inappropriate here.

### B. Burford Abstention

Defendant further argues that the court should abstain from exercising its jurisdiction over this case pursuant to the principles outlined in Burford. (See Def.'s Br. at 4-5.) The Supreme Court has summarized Burford abstention as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of

---

[10] Because the court finds that the legal issues at stake in this case are not difficult, it need not decide whether the issues are of "substantial public import." See Colo. River, 424 U.S. at 814.

[11] Defendant cites Canady and Naylor for the principle that federal courts should abstain in order to allow state law to develop around new legislation. (Def.'s Br. at 19-20.) These cases, however, explicitly state that abstention is appropriate only where state law is unclear, which is not the case here. See Canady, 608 F. Supp. at 1468; Naylor, 585 F.2d at 565.

8

the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

New Orleans Pub. Serv., Inc. v. Council of City of New Orleans ("NOPSI"), 491 U.S. 350, 361 (1989) (quoting Colo. River, 424 U.S. at 814).

### 1. Burford's Application to Court-Administered Programs

The threshold question is whether Burford extends to cases like this one which involve a court-administered state program but no particular state regulating agency is involved.[12] Plaintiff appears to argue that it does not (see Pl.'s Br. at 10-11), but Defendant asserts that "Burford and its progeny did not expressly limit abstention to cases in which state agency decision-making is implicated." (Def.'s Reply at 2.) The weight of controlling authority suggests that the existence of an administrative scheme is necessary to apply Burford.

The Burford test, as articulated in NOPSI, suggests that a state administrative agency is in fact a necessary precondition to application of Burford: "Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies . . . ." NOPSI, 491 U.S. at 361. In fact, the Supreme Court has repeatedly stated that "Burford [abstention] is concerned with protecting complex state

---

[12] Defendant cites Cox v. United States Department of Agriculture, 954 F. Supp. 2d 1061, 1065 (D. Nev. 2012), rev'd and remanded on other grounds, Cox v. U.S. Dep't of Agric., 800 F.3d 1031 (9th Cir. 2015), in support of its position that the court should abstain from adjudicating mortgage foreclosure proceedings, but fails to note an important distinction between this case and Cox. (See Def.'s Br. at 14, 20.) In Cox, the borrower sought judicial review of an administrative decision. See Cox, 954 F. Supp. 2d at 1065. The borrower filed a Petition for Judicial Review in state court, requesting review of state Foreclosure Mediation Program proceedings. Id. at 1062. The mortgagee removed the petition to federal court. Id. The federal court characterized the state Foreclosure Mediation Program proceedings as administrative proceedings, and held that review of such proceedings should be left to the state courts. Id. at 1064. The appropriate analog here would be if the parties were seeking judicial review in federal court of a settlement conference they had participated in pursuant to CPLR 3408. To the contrary, Plaintiff commenced this mortgage foreclosure action in federal court.

administrative processes from undue federal interference."[13] Id. at 362 (emphasis added); see, e.g., Quackenbush, 517 U.S. at 725; England v. La. State Bd. of Med. Exam'rs, 375 U.S. 411, 464 n.5 (1964); Allegheny Cty., 360 U.S. at 189. The overwhelming balance of Second Circuit case law also suggests that an administrative scheme is a prerequisite to Burford abstention. See, e.g., Dittmer v. Cty. of Suffolk, 146 F.3d 113, 117 (2d Cir. 1998); Cty. of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1309 (2d Cir. 1990).

Notwithstanding, the Second Circuit has on rare occasions applied Burford in the absence of an administrative scheme. For example, in Friedman v. Revenue Management of New York, Inc., 38 F.3d 668 (2d Cir. 1994), the Second Circuit held that the district court properly abstained from dissolving a New York corporation on Burford grounds.[14] 38 F.3d at 671. While the court did not directly address the fact that the action did not involve agency action, it nonetheless held that the case "implicate[d] Burford, given the comprehensive regulation of corporate governance and existence by New York." Id.; see also id. ("New York has a strong interest in the creation and dissolution of its corporations and in the uniform development and interpretation of the statutory scheme regarding its corporations."). It appears that this holding is limited to actions seeking to dissolve corporations, however, as "[i]t has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve

---

[13] Defendant points to Justice Anthony Kennedy's concurrence in Quackenbush, in which he suggests that a court-administered program may be a complex state administrative process for abstention purposes: "The fact that a state court rather than an agency was chosen to implement California's scheme provided more reason, not less, for the Federal Court to stay its hand." 517 U.S. at 733. While the quoted language suggests that Justice Kennedy believes Burford could extend to a court-administered program, his statement was made in a concurrence and has not thereafter been adopted by a majority of the Justices. It is, therefore, not binding on this court.

[14] Lower courts have also held that Burford prevents federal courts from deciding landlord-tenant disputes. See Jaffe v. Clarke, 566 F. Supp. 1500, 1502 (S.D.N.Y. 1983) (holding that the state's agencies and courts are accustomed to resolving landlord-tenant disputes), aff'd without opinion, 742 F.2d 1436 (2d Cir. 1984); Moos v. Wells, 585 F. Supp. 1348, 1349-50 (S.D.N.Y. 1984) (citing Jaffe).

control of or interference with the internal affairs of a domestic corporation of the state." Pennsylvania v. Williams, 294 U.S. 176, 185 (1935).

Defendant has not identified, and the court cannot find, case law that suggests that it is also standard practice for federal courts to defer to state courts when it comes to residential mortgage foreclosure actions.[15] To the contrary, these types of cases are routinely adjudicated in federal court. See, e.g., Gustavia Home, LLC v. Rice, No. 16-CV-2353 (BMC), 2016 WL 6683473, at *5 (E.D.N.Y. Nov. 14, 2016); E. Sav. Bank v. Aufiero, No. 14-CV-0256 (JFB) (AYS), 2016 WL 1056998, at *9 (E.D.N.Y. Mar. 14, 2016); E. Sav. Bank, FSB v. Bright, No. 11-CV-1721 (ENV) (MDG), 2012 WL 2674668, at *3 (E.D.N.Y. July 5, 2012); Kondaur Capital Corp. v. Cajuste, 849 F. Supp. 2d 363, 364 (E.D.N.Y. 2012); Home Loan Inv. Bank, F.S.B. v. Goodness & Mercy, Inc., No. 10-CV-4677 (ADS), 2011 WL 1701795, at *11 (E.D.N.Y. Apr. 30, 2011); cf. F.D.I.C. v. Four Star Holding Co., 178 F.3d 97, 102 (2d Cir. 1999) (reversing district court decision granting defendants' motion to dismiss on Colorado River abstention grounds in mortgage foreclosure action); Nat'l City Mortg. Co. v. Stephen, 647 F.3d 78, 82-83 (3d Cir. 2011) (holding Burford did not apply in mortgage foreclosure action brought in federal court based on diversity jurisdiction); F.D.I.C. v. Sweeney, 136 F.3d 216, 219 (1st Cir. 1998) (holding Burford abstention inapplicable to mortgage foreclosure dispute where "[t]he legal issues are straightforward, and there is no unified state administrative apparatus to disrupt").

In the absence of clear precedent that would compel this court to apply Burford to a court-administered program involving mortgage foreclosures, in view of the fact that the legal

---

[15] Defendant cursorily asserts that New York's "comprehensive body of law governing the residential foreclosure process . . . is comparable to other state regulatory schemes in cases in which courts have found abstention appropriate," but offers no support for this argument. (Def. Reply at 1.)

issues presented in this case are not complex,[16] and in light of established authority directing courts to abstain only in "extraordinary circumstances," the court declines to extend Burford to this case.[17] Accordingly, the court declines to dismiss the action based on the abstention doctrine.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. 18) is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
March 1, 2017

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[16] See supra Section II.A.

[17] See Doe v. Hirsch, 731 F. Supp. 627, 631 n.3 (S.D.N.Y. 1990) (declining to abstain under Burford because a "critical element of the Burford doctrine [wa]s missing," namely a complex administrative scheme); see also Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co., 621 F.3d 554, 567 (6th Cir. 2010) ("While the presence of state administrative agency involvement is not prerequisite to Burford abstention, it represents an important indicator of the state's interest in implementing a coherent policy.")